# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Hector Vasquez,

    Petitioner

v.

Attorney General of the State of Nevada, et al.,

    Respondents

Case No. 2:13-cv-0279-JAD-VCF

**Order Denying Habeas Petition**

ECF No. 19

Hector Vasquez is serving thirty years to life after pleading guilty to, and having been convicted of, first-degree murder, first-degree kidnapping, and battery with intent to kill in Nevada state court. In this single-ground, counseled federal habeas corpus petition, Vasquez claims that ineffective assistance of counsel caused his guilty plea not to be knowingly and voluntarily entered.[1] Because the state-court record belies this claim, I deny Vasquez's petition.

## Background

**A.    Vasquez pled guilty to the murder, battery, and kidnapping of his girlfriend.**

Vasquez was convicted in Nevada's Eighth Judicial District Court in Clark County, Nevada, after guilty pleas to first-degree murder, first-degree kidnapping, and battery with intent to kill on February 4, 2010.[2] He was sentenced to a term of life in prison with the possibility of parole after twenty years for the murder, a consecutive term of life in prison with the possibility of parole after five years for the kidnapping, and a consecutive term of five to fifteen years for

---

[1] ECF No. 19.

[2] *See* Judgment of Conviction, Exhibit 22 (ECF No. 14-22). Unless otherwise noted, the exhibits referred to in this order were filed by Vasquez, and are found in the record at ECF Nos. 14, 15, and 16.

the battery.[3]  So, in total, Vasquez's sentence amounts to thirty years to life in prison.

Vasquez's convictions resulted from the death of Patricia Ocanas, his former girlfriend and the mother of three young children—two of them Vasquez's.[4]  Ocanas was shot five times, at least three times in the back.[5]  At the time of the murder, there was a temporary protective order in place protecting her from Vasquez.[6]

At Vasquez's preliminary hearing, the prosecution presented strong evidence showing that Vasquez had shot and killed Ocanas.  A ten-year-old boy, who was riding his bicycle in a parking lot at the apartment complex where the murder occurred, testified that he heard gunshots and then saw Vasquez run away from the area carrying a gun; he then saw Ocanas on the ground.[7]  Another witness testified at the preliminary hearing that just before the murder, he saw Vasquez go to an area outside the apartment buildings, then he saw Ocanas go in the same direction and—just a few moments later—heard gunshots.  He went to where the gunshots came from and saw Ocanas on the ground with gunshot wounds.[8]  The same witness testified that about a week before Ocanas's murder, Vasquez had threatened to kill him, and Ocanas.[9]  A police detective testified at the preliminary hearing that, after Vasquez was arrested in Mexico

---

[3] *See id.*; *see also* Transcript of Sentencing, Exhibit H in Support of Respondents' Answer (ECF No. 25-8).

[4] *See* Officer's Report, Exhibit 2 (ECF No. 14-2); Declaration of Warrant/Summons, Exhibit 3 (ECF No. 14-3); Declaration of Warrant/Summons, Exhibit 4 (ECF No. 14-4); Transcript of Preliminary Hearing, Exhibit 7 (ECF No. 14-7).

[5] *See* Officer's Report, Exhibit 2 at 10 (ECF No. 14-2 at 11).

[6] *Id.* at 10–11 (ECF No. 14-2 at 11–12).

[7] *See* Transcript of Preliminary Hearing, Exhibit 7 at 5–20 (ECF No. 14-7 at 6–21).

[8] *See id.* at 20-26, 30-33 (ECF No. 14-7 at 21–27, 31–34).

[9] *See id.* at 28–29, 34–36 (ECF No. 14-7 at 29–30, 35–37).

some three months after Ocanas was killed, Vasquez confessed to him that he shot her.[10]  The detective also testified that police found a storage box for a nine-millimeter handgun and corresponding ammunition in a room where Vasquez stayed at his mother's home.[11]  Vasquez confessed to the detective that the handgun that he used to shoot Ocanas came in the box found in his mother's home.[12]

Vasquez signed a written guilty-plea agreement on October 26, 2009.[13]  Attached to it was a "Certificate of Counsel" in which his attorney stated that he had fully explained to Vasquez the allegations and charges against him and had advised him of the penalties for each charge, and that Vasquez's plea was entered upon his advice.[14]  Before he signed the agreement, Vasquez met with his attorney numerous times, went over the agreement page-by-page, and did not ask for additional time to consider the deal.[15]

At the plea hearing conducted the same day the plea agreement was signed, Vasquez confirmed that he spoke English and was comfortable speaking English at the hearing, and read, wrote, and understood English.  He told the court that he had attended school through the tenth grade and had later graduated from high school.  He acknowledged that he had read the plea agreement and had consulted with counsel about it.  He told the court he had no questions.[16]  Vasquez admitted that he shot and killed Ocanas.  He confirmed he understood the charges and the sentencing process, and he conveyed to the judge his understanding of the benefit he was

---

[10] *See id.* at 47-49 (ECF No. 14-7 at 48–50); *see also* Voluntary Statement, Exhibit B to Supplemental Memorandum in Support of Petition for Writ of Habeas Corpus, Exhibit 31 (ECF No. 15 at 111–40) (transcript of Vasquez's statement to police detectives).

[11] *See id.* at 49–51 (ECF No. 14-7 at 50–52).

[12] *See id.* at 51 (ECF No. 14-7 at 52).

[13] ECF No. 14-15.

[14] *Id.* at 7

[15] ECF No. 15-2 at 5–10 (transcript of evidentiary hearing in state habeas action).

[16] ECF No. 14-17 (transcript of Oct. 26, 2009, plea hearing).

3

receiving for his plea: "I know I'm getting a chance with coming out one day."[17]

Vasquez did not pursue a direct appeal of the judgment of conviction.

**B.   State post-conviction proceedings**

On February 1, 2010, Vasquez filed a *pro se* motion to withdraw his guilty plea.[18] The state district court denied that motion in a written decision filed on March 18, 2010.[19]

On January 12, 2011, Vasquez filed a *pro se* petition for writ of habeas corpus in the state district court.[20] Counsel was appointed for Vasquez, and Vasquez filed a counseled supplemental memorandum in support of his habeas petition on July 14, 2011.[21] The state district court held an evidentiary hearing on September 15, 2011.[22] On November 14, 2011, the state district court denied Vasquez's petition.[23] Vasquez appealed, and the Nevada Supreme Court affirmed on January 16, 2013.[24]

**C.   Federal habeas proceedings**

Vasquez initiated this federal habeas corpus action on February 20, 2013, by filing a *pro se* habeas corpus petition.[25] Counsel was appointed to represent Vasquez.[26] With counsel,

---

[17] *Id.* at 7.

[18] Motion to Withdraw Guilty Plea, Exhibit 21 (ECF No. 14-21).

[19] Decision, Exhibit 24 (ECF No. 14-24).

[20] Petition for Writ of Habeas Corpus, Exhibit 28 (ECF No. 14-28).

[21] Supplemental Memorandum in Support of Petition for Writ of Habeas Corpus, Exhibit 31 (ECF No. 15).

[22] Transcript of Evidentiary Hearing, Exhibit 33 (ECF No. 15-2).

[23] Decision, Exhibit 34 (ECF No. 15-3).

[24] Order of Affirmance, Exhibit 42 (ECF No. 15-11).

[25] ECF No. 5.

[26] *See* Order entered August 30, 2013 (ECF No. 4); Notice of Appearance of Counsel (ECF No. 9).

Vasquez filed an amended habeas petition—the operative petition in this case—on April 7, 2014.[27] Respondents filed an answer,[28] and Vasquez filed a reply.[29]

## Discussion

### A. Standard for habeas relief under 28 U.S.C. § 2254(d)

A federal court may not grant an application for a writ of habeas corpus on behalf of a person in state custody on any claim that was adjudicated on the merits in state court unless the state-court decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.[30] A state court unreasonably applies clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."[31] The decision must be more than incorrect or erroneous; it must be objectively unreasonable.[32] "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."[33] "Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."[34]

---

[27] ECF No. 19.

[28] ECF No. 24.

[29] ECF No. 28.

[30] 28 U.S.C. § 2254(d).

[31] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).

[32] *Id*. (quoting *Williams*, 529 U.S. at 409).

[33] *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

[34] *Id*. at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing standard as "a difficult to meet" and "highly deferential standard for

**B. The record does not support habeas relief on Vasquez's sole ineffective-assistance-of-counsel claim.**

Vasquez's sole ground for relief is ineffective assistance of counsel. He contends that his counsel "was ineffective in not adequately explaining a complicated plea agreement to a mentally addled client."[35]

This claim was raised and rejected in Vasquez's state habeas action after an evidentiary hearing.[36] On appeal from that decision, the Nevada Supreme Court rejected every nuance of Vasquez's argument:

> First, Vasquez argues that counsel was ineffective for advising him to plead guilty to first-degree murder because there was no evidence of premeditation. NRS 200.010, 200.030. Counsel testified at the evidentiary hearing that he firmly believed Vasquez would be found guilty at trial and could possibly receive two life sentences. Candid advice about the potential outcome at trial is not deficient performance. Moreover, the record reflects evidence of premeditation and Vasquez received a benefit by pleading guilty. Because Vasquez failed to demonstrate that counsel was deficient or that he was prejudiced, we conclude that the district court did not err in denying this claim.
>
> Second, Vasquez argues that counsel was ineffective for advising him to plead guilty to kidnapping and battery with the intent to kill because there was no evidence to support kidnapping and battery with intent to kill is a lesser-included offense of first-degree murder. As noted during the guilty plea canvass and testified to by counsel at the evidentiary hearing, the charges were not intended to be factual and were included for the purpose of obtaining a sentence of 25 to 30 years rather than the possible two life sentences that accompanied the original charge and enhancement. The record reflects that Vasquez was aware of the fictitious nature of the charges and that he received a benefit by pleading guilty to them rather than proceeding to trial on the original charge. Because Vasquez failed to demonstrate that counsel was deficient or that he was prejudiced, we conclude that the district court did not err in denying this claim.
>
> Third, Vasquez argues that counsel was ineffective because counsel never fully explained to him that two of the counts were fictitious. Similarly, Vasquez claims that counsel did not explain to him that by pleading guilty he was waiving his right to a preliminary hearing on the two fictitious counts and other

---

evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

[35] *Id*. at 12.

[36] *See* Supplemental Memorandum in Support of Petition for Writ of Habeas Corpus, Exhibit 31 at 8–10 (ECF No. 15 at 9–11); Transcript of Evidentiary Hearing, Exhibit 33 (ECF No. 15-2).

consequences of pleading guilty. Having considered the record, we conclude that the district court did not err in finding that Vasquez was aware of the fictitious nature of the counts and the consequences of pleading guilty. Counsel's testimony, as well as the guilty plea agreement and canvass, demonstrate that Vasquez was aware of the guilty plea and its consequences. Because Vasquez failed to demonstrate that counsel was deficient or that he was prejudiced, we conclude that the district court did not err in denying this claim.

Fourth, Vasquez argues that counsel's errors, considered cumulatively, warrant relief. Because Vasquez failed to establish that counsel was ineffective on any of the grounds that he established, there are no errors to cumulate.[37]

In *Strickland v. Washington*,[38] the Supreme Court propounded a two-prong test for claims of ineffective assistance of counsel. The petitioner must demonstrate: (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[39] A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.[40] The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[41] To establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding."[42] And as the Supreme Court recognized in *Hill v. Lockhart*, in the context of a guilty plea, to satisfy the prejudice prong of the *Strickland* test, the petitioner must show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty

---

[37] Order of Affirmance, Exhibit 42 at 2–3 (ECF No. 15-11 at 3–4).

[38] *Strickland v. Washington*, 466 U.S. 668 (1984).

[39] *Strickland*, 466 U.S. at 688, 694.

[40] *Id*. at 689.

[41] *Id*. at 687.

[42] *Id*. at 693.

7

and would have insisted on going to trial."[43]

Where a state court has adjudicated a claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable under the AEDPA is especially difficult.[44] In *Harrington v. Richter*, the Supreme Court instructed that the question is not whether counsel's actions were reasonable but whether there is any reasonable argument that counsel satisfied *Strickland*:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.[45]

The record in this case demonstrates that counsel was not ineffective and supports the conclusion that the Nevada Supreme Court's ruling was reasonable. In the written plea agreement that Vasquez signed on October 26, 2009, he represented that he fully understood the charges and the consequences of his plea deal and guilty plea, and that he was entering the agreement voluntarily and after fully consulting with his attorney:

> I have discussed the elements of all of the original charge(s) against me with my attorney and I understand the nature of the charge(s) against me.
>
> I understand that the State would have to prove each element of the charge(s) against me at trial.
>
> I have discussed with my attorney any possible defenses, defense strategies and circumstances which might be in my favor.
>
> All of the foregoing elements, consequences, rights, and waiver of rights have been thoroughly explained to me by my attorney.

---

[43] *Hill v. Lockhart*, 474 U.S. 52, 56–60 (1985).

[44] *See Harrington*, 562 U.S. at 104-05.

[45] *Id.* at 105 (internal citations omitted); *see also Cheney v. Washington*, 614 F.3d 987, 994–95 (9th Cir. 2010) (acknowledging the double deference required for state court adjudications of *Strickland* claims).

8

> I believe that pleading guilty and accepting this plea bargain is in my best interest, and that a trial would be contrary to my best interest.
>
> I am signing this agreement voluntarily, after consultation with my attorney, and I am not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement.
>
> I am not now under the influence of any intoxicating liquor, a controlled substance or other drug which would in any manner impair my ability to comprehend or understand this agreement or the proceedings surrounding my entry of this plea.
>
> My attorney has answered all my questions regarding this guilty plea agreement and its consequences to my satisfaction and I am satisfied with the services provided by my attorney.[46]

In addition, in a "Certificate of Counsel" signed by Vasquez's counsel and attached to the plea agreement, Vasquez's counsel stated that he fully explained to Vasquez the allegations and the charges against him, that he had advised him regarding the penalties relative to each charge, and that Vasquez's guilty plea was made with his advice.[47]

At the guilty-plea hearing, Vasquez confirmed that he spoke English and was comfortable speaking English at that hearing.[48] Vasquez told the court that he had attended school through tenth grade, had later graduated from high school, and read, wrote and understood English.[49] Vasquez acknowledged that he had read the plea agreement, and had discussed it with his counsel.[50] Vasquez told the court that he had no questions.[51] Vasquez acknowledged that he understood that the judge had discretion regarding his sentence, and, in particular, had discretion to sentence him to up to five years before parole eligibility on the battery conviction, consecutive

---

[46] Guilty Plea Agreement, Exhibit 15 at 4–5 (ECF No. 14-15 at 5–6).

[47] See id. at 6 (ECF No. 14-15 at 7).

[48] See Transcript, October 26, 2009, Exhibit 17 at 2–3 (ECF No. 14-17 at 3–4).

[49] See id. at 3 (ECF No. 14-17 at 4).

[50] See id. at 3-4 (ECF No. 14-17 at 4–5).

[51] See id. at 4 (ECF No. 14-17 at 5).

9

to the sentences on the other two charges.[52] With respect to the fictitious nature of the kidnapping and battery charges, Vasquez's counsel and the prosecutor explained, on the record, that those charges were included in the plea agreement in order to allow for the agreed-upon sentence range of 25 to 30 years before parole eligibility.[53] Vasquez admitted that he shot and killed Ocanas.[54] And, perhaps most importantly, Vasquez indicated on the record that he understood the benefit to him of the plea agreement that he entered, stating: "And I know I'm getting a chance with coming out one day."[55]

In *Blackledge v. Allison*,[56] the Supreme Court addressed the evidentiary weight of the record of a plea proceeding when the plea is subsequently subject to a collateral challenge. While noting that the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity."[57] Vasquez has not demonstrated any reason to presume that his representations are undeserving of this strong presumption.

Vasquez's representations during his plea proceedings are corroborated by the testimony from Vasquez's attorney about the circumstances of the plea. At the evidentiary hearing in the state habeas action, counsel testified that he met with Vasquez numerous times—"too numerous

---

[52] *See id*. at 4–6 (ECF No. 14-17 at 5–7).

[53] *See id*. at 7–9 (ECF No. 14-17 at 8–10).

[54] *See id*. at 8 (ECF No. 14-17 at 9).

[55] *See id*. at 6 (ECF No. 14-17 at 7).

[56] *Blackledge v. Allison*, 431 U.S. 63 (1977).

[57] *Blackledge*, 431 U.S. at 74; *see also Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012); *Little v. Crawford*, 449 F.3d 1075, 1081 (9th Cir. 2006).

to count"—before the Vasquez entered the plea.[58] Counsel testified that the plea negotiations with the prosecutor took "at least a couple of hours," and that he spoke with Vasquez during that time.[59] He added that he discussed the plea agreement thoroughly with Vasquez.[60] He explained to Vasquez the importance of negotiating a plea that did not include a deadly weapon enhancement with respect to the murder charge.[61] Counsel testified that if Vasquez was convicted of murder with a deadly weapon enhancement, he would have received a sentence of at least forty years in prison before parole eligibility, and could possibly have been sentenced to two consecutive terms of life in prison without the possibility of parole.[62] Counsel testified that if Vasquez's case went to trial, it was very likely that he would have been convicted of first-degree murder with use of a deadly weapon.[63] Counsel testified that he explained to Vasquez how the plea agreement could be structured, including the fictitious kidnapping and battery charges, and eliminating the deadly weapon enhancement, to create the agreed-upon sentence range of 25 to 30 years in prison before parole eligibility.[64] Counsel testified that before Vasquez signed the plea agreement, they went over it page by page, and he answered all of Vasquez's questions.[65] And Vasquez did not ask for more time to consider plea agreement.[66]

In this court's view, the evidence plainly demonstrated that Vasquez had ample time to

---

[58] *See* Transcript of Evidentiary Hearing, Exhibit 33 at 4–5 (ECF No. 15-2 at 5–6).

[59] *See id*. at 6 (ECF No. 15-2 at 7).

[60] *See id*. at 15 (ECF No. 15-2 at 16).

[61] *See id*. at 6, 8–9 (ECF No. 15-2 at 7, 9–10).

[62] *See id*. at 9–10, 14, 17 (ECF No. 15-2 at 10–11, 15, 18); *see also* Defendant's Sentencing Memorandum, Exhibit 19 at 3 (ECF No. 14-19 at 4).

[63] Transcript of Evidentiary Hearing, Exhibit 33 at 8, 13, 20–21 (ECF No. 15-2 at 9, 14, 21–22).

[64] *See id*. at 7–8, 15–16 (ECF No. 15-2 at 8–9, 16–17).

[65] *See id*. at 15 (ECF No. 15-2 at 16).

[66] *See id*. at 9 (ECF No. 15-2 at 10).

consider the plea agreement, his counsel thoroughly explained the plea agreement to him, and he understood it when he signed it and pled guilty. There is no evidence that Vasquez was unable to understand the import of his guilty plea as a result of any language barrier, low intelligence, learning disability, or limited reading ability; every indication is that Vasquez understood the plea agreement and the consequences of his guilty plea. Also, the record reflects that counsel explained to Vasquez the structure of the plea agreement, including the importance of the inclusion of the two fictional charges, and that Vasquez understood his plea to those charges.

There is no evidence to support Vasquez's claim that his counsel performed unreasonably in advising him regarding the plea agreement. And there is no evidence indicating that there was a reasonable probability that, but for any error on the part of counsel, Vasquez would not have pled guilty and would have insisted on going to trial. On the contrary, the record shows that counsel negotiated a good plea agreement for Vasquez and fully counseled him on it, and that the plea gave Vasquez a chance to live part of his life outside prison—a chance he may well have missed had he gone to trial on the charge of murder with use of a deadly weapon.

The Nevada Supreme Court's denial of Vasquez's claim was not contrary to, or an unreasonable application of, *Strickland v. Washington*, *Hill v. Lockhart*, or any other clearly established federal law as determined by the Supreme Court. And it was not based on an unreasonable determination of the facts in light of the evidence presented. For these reasons, I deny Vasquez habeas corpus relief.

C. **Certificate of Appealability**

To obtain a certificate of appealability, a petitioner must make "a substantial showing of a denial of a constitutional right"[67] by showing that "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong."[68] To meet this threshold inquiry, the petitioner must demonstrate that the issues are debatable among jurists of reason, a court could resolve the issues differently, or that the questions are adequate to deserve

---

[67] 28 USC § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

[68] *Slack*, 529 U.S. at 484.

encouragement to proceed further.[69]

Vasquez's claim does not satisfy the standard for issuance of a certificate of appealability. Accordingly, I decline to issue one to Vasquez here.

## Conclusion

Accordingly, with good cause appearing and no reason to delay, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the First Amended Petition for Writ of Habeas Corpus in this case **(ECF No. 19) is DENIED**. The Clerk of Court is directed to **ENTER JUDGMENT ACCORDINGLY and CLOSE THIS CASE.**

IT IS FURTHER ORDERED that **the court declines to issue a certificate of appealability.**

DATED: June 1, 2017

_____
Jennifer A. Dorsey
United States District Judge

---

[69] *Id.*